John L. Amsden
Michael G. Black
BECK, AMSDEN & STALPES PLLC
1946 Stadium Drive, Suite 1
Bozeman, MT 59715
Tel:   (406) 586-8700
Fax:   (406) 586-8960
amsden@becklawyers.com
mike@becklawyers.com

John M. Morrison
MORRISON, SHERWOOD, WILSON & DEOLA PLLP
401 North Last Chance Gulch, PO Box 557
Helena, MT 59601
Tel:   (406) 442-3261
Fax:   (406) 443-7294
john@mswdlaw.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, GREAT FALLS DIVISION

| | |
|---|---|
| VICKY BYRD, JENNIFER TANNER, LINDA LARSEN, AUDREY TURNER, PAUL LEE, BRANDI BRETH, KATE HOULIHAN, BARB MOSER, <br><br>Plaintiffs, <br><br>v. <br><br>ST. PETERS REGIONAL HEALTH SERVICES, BOZEMAN HEALTH DEACONESS HOSPITAL, NORTHERN MONTANA HOSPITAL, RCHP BILLINGS—MISSOULA LLC, CMC MISSOULA INC., BILLINGS CLINIC, <br><br>Defendants. | CAUSE NO. CV-17-141-GF-BMM <br><br>**FIRST AMENDED COMPLAINT** |

Plaintiffs complain and allege as follows in support of this complaint, brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et. seq.*:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Vicky Byrd is an individual residing in Helena, Montana. Plaintiff Byrd is and/or was, at times relevant hereto, an employee of Defendant St. Peter's Community Hospital and a participant in its employee benefit health plan.

2. Plaintiff Jennifer Tanner is an individual residing in Clancy, Montana. Plaintiff Tanner is and/or was, at times relevant hereto, an employee of Defendant St. Peter's Community Hospital and a participant in its employee benefit health plan.

3. Plaintiff Linda Larsen is an individual residing in Bozeman, Montana. Plaintiff Larsen is and/or was, at times relevant hereto, an employee of Defendant Bozeman Health Deaconess Hospital and a participant in its employee benefit health plan.

4. Plaintiff Audrey Turner is an individual residing in Havre, Montana. Plaintiff Byrd is and/or was, at times relevant hereto, an employee of Defendant Northern Montana Hospital and a participant in its employee benefit health plan.

5. Plaintiff Paul Lee is an individual residing in Helena, Montana. Plaintiff Lee is and/or was, at times relevant hereto, an employee of Defendant St. Peter's Community Hospital and a participant in its employee benefit health plan.

6. Plaintiff Brandi Breth is an individual residing in Missoula, Montana. Plaintiff Breth is and/or was, at times relevant hereto, an employee of Defendant Community Medical Center Hospital and a participant in its employee benefit health plan.

7. Plaintiff Kate Houlihan is an individual residing in Missoula, Montana. Plaintiff Houlihan is and/or was, at times relevant hereto, an employee of Defendant Community Medical Center Hospital and a participant in its employee benefit health plan.

8. Plaintiff Barb Moser is an individual residing in Billings, Montana. Plaintiff Moser is and/or was, at times relevant hereto, an employee of Defendant Community Billings Clinic and a participant in its employee benefit health plan.

9. Plaintiffs are or at relevant times were employees of Defendants and participants in Defendants' employee benefit programs, which are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et. seq.* ("ERISA").

10. Defendant St. Peter's Regional Health Services is a Montana public benefit corporation operating as St. Peter's Community Hospital in Helena, Montana.

11. Defendant Bozeman Health Deaconess Hospital is a Montana public benefit corporation operating as a community hospital in Bozeman, Montana.

12. Defendant Northern Montana Hospital is a Montana public benefit corporation operating as a community hospital in Havre, Montana.

13. Defendant RCHP Billings—Missoula Community Medical Center is a foreign limited liability company or series limited liability company, which owns Community Medical Center in Missoula, Montana.

14. Defendant CMC Missoula Inc. is a Montana public benefit corporation, which operates Community Medical Center in Missoula, Montana.

15. Defendant Billings Clinic is a non-profit health care organization operating in Billings, Montana.

16. Defendants sponsor employee health benefit plans by which eligible employees and their eligible dependents obtain benefits.

17. John Does 1-10 are individuals or business entities who may owe duties to Plaintiffs or be subject to an accounting on Plaintiffs' behalf.

18. This Court has personal jurisdiction over Defendants, including because Defendants are organized, incorporated or located in Montana, the claims

asserted herein arise out of Defendants' activities within the state, including their operation of hospitals and clinics in Montana and the employment of Montana citizens and residents. On information and b96

19. As provided for in 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), this Court has subject matter jurisdiction over this action, including because it arises under ERISA.

20. Pursuant to 28 U.S.C. § 1367(a), this Court further has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

21. As provided in 29 U.S.C.A. § 1132(e)(2), venue is proper in this Court, including because one or more of the subject plans is administered in this district; breaches may have occurred here; and one or more of the Defendants may be "found" in this district as that term is interpreted by ERISA jurisprudence, providing that if a court may exercise personal jurisdiction, then the defendant is "found" in that district for purposes of ERISA venue. *Varsic v. U.S.*, 607 F.2d 245, 247-48 (9th Cir. 1979).

## ALLEGATIONS COMMON TO ALL COUNTS

22. Defendant hospitals are ERISA fiduciaries in connection with their employee benefit plans.

23. Defendants previously owned an entity called New West Health Services, which provided health insurance to Montanans, including participants in Defendants' employee benefit plans.

24. In or about 2011, Defendants attempted to enter into a deal with Blue Cross Blue Shield of Montana (BCBSMT), a Montana health services corporation which has since been acquired by an Illinois mutual insurance company called Health Care Service Corporation. HCSC now uses BCBSMT as its Montana dba.

25. BCBSMT provides health insurance coverage and/or third party administrative services to employers that sponsor employee health benefit plans.

26. Pursuant to the attempted deal, BCBSMT would acquire New West and pay approximately $26 million for Defendants' agreement to stop buying employee health insurance from New West and instead buy it exclusively from BCBSMT for six years. Further, so long as they did not compete with BCBSMT in the sale of commercial health insurance, BCBSMT would grant Defendants two seats on BCBSMT's board of directors.

27. This deal was blocked by a joint federal and state anti-trust action captioned *United States and State of Montana v. Blue Cross and Blue Shield of Montana, et al.*, Cause No. CV-11-123-BLG-RFC (Nov. 8, 2011).

28. In 2011, Defendants instead partially divested their interest in New West by selling their health insurance business to an Oregon insurer named Pacific Source.[1]

29. With respect to their own roughly 11,000 employees, Defendants agreed to enter into an "Employee Benefit Plan Commitment Agreement" with BCBSMT, which was similar in many respects to the deal blocked by the antitrust action.

30. This deal was one global agreement between Defendant hospitals and BCBSMT. Under this agreement, all payments by BCBSMT were to be paid into a trust or trusts to be used exclusively for the payment of benefits to qualified persons under benefit plans established by Defendant Hospitals.

31. Pursuant to this deal, which became effective January 1, 2012, Defendant hospitals received $26 million and two seats on BCBSMT's board of

---

[1] Technically, this was a bulk reinsurance transfer arrangement. http://csimt.gov/wp-content/uploads/INS-2011-317-FOF.pdf. Final judgment in the federal anti-trust action was entered shortly after this transfer of New West to Pacific Source was approved by the State Auditor.

directors. In return, they guaranteed their employee health plan administration and stop loss business to BCBSMT for a minimum period of six years.

32.   Public financial documents confirm BCBSMT expected to more than recoup its $20 million payments over the six-year term. In particular, the annual statement of BCBSMT, filed in March 2012, states:

> In December 2011, the Company entered into a six-year agreement with five of the six Hospital owners of new West health services to provide health care coverage and administrative services for their employees. As of the effective date, January 1, 2012, the company recorded a fully non-admitted intangible asset... and corresponding intangible liability… Reflecting the value of future payment commitments. The company anticipates that the purchase price will be recovered over the term of the agreement through insurance coverage and administrative services to the hospital.

The same annual statement shows an intangible liability in the amount of $21,040,000 and an intangible non-admitted asset of $25,204,167.

33.   Late last year, Defendant St. Peter's notified participants in its employee benefit plan that it was making a distribution of "some of the proceeds" of the BCBSMT transaction.

34.   In early 2018 (after this suit was first filed), Defendant Northern Montana Hospital similarly notified its plan participants that it would be "issuing credits" from a trust account containing the "employee portion of those payments" from the BCBSMT transaction.

FIRST AMENDED COMPLAINT - 8

35. On information and belief, an unspecified remainder—perhaps even the bulk of the payments—has been diverted to the Defendant hospitals' own use at the expense of plan participants to whom they owe fiduciary duties.

36. To Plaintiffs' knowledge, the other Defendant hospitals have not made distributions or provided any information about a trust account containing employee portions of the payments from the BCBSMT payments.

37. Defendant hospitals told employees during bargaining sessions that health insurance was not subject to negotiations because a six-year commitment had been made to BCBSMT.

38. Six years is an unusually long term for these types of agreements.

39. On information and belief, Defendants obtained lucrative payments from BCBSMT in exchange for committing the plans to this unusually long contract term.

40. Defendants and BCBSMT are ERISA fiduciaries with duties to Plaintiffs, including: (1) the duty of loyalty, requiring all decisions with regard to the plan be made in the interests of the participants and beneficiaries; (2) the duty of prudence, requiring the care, skill, prudence, and diligence of a prudent person acting under similar circumstances; and, (3) the duty of exclusivity, requiring a fiduciary to act for the exclusive purpose of providing benefits to plan participants.

41. On information and belief, Defendants engaged in conflicted transactions in which their interest in obtaining payments from BCBSMT violated their duties as ERISA fiduciaries to act for the exclusive purpose of providing benefits to plan participants.

42. On information and belief, while the plans paid hundreds of thousands to millions of dollars per year to BCBSMT, Defendants were receiving payments back from BCBSMT, which were not distributed back to the plans or to the employee participants.

43. It is highly unusual for an employer to receive kickbacks from the health insurer/administrator of its health plan. But to the extent value was received for committing the health plan to BCBSMT, these funds belonged to the plan and should have been fully distributed to the plan and/or its participants.

44. Instead, Defendant hospitals diverted some or all of these payments to themselves for their own benefit at the expense of the plans and the employee participants and their beneficiaries.

45. Plaintiffs are entitled to legal, equitable and remedial relief as provided for under ERISA.

46. At a minimum, Defendants must provide an accounting of the payments from BCBSMT, explaining what portion of those payments was placed

into trust accounts for plan participants versus retained by the Defendants for their own use, and the basis for past and future partial distributions to plan participants.

47. In addition, Defendants must disgorge any profits obtained as a result of their involvement in a deal violating their ERISA fiduciary duties of loyalty, exclusivity, or prudence—and compensate the plans for any losses suffered as a result.

## COUNT I – FOR AN ACCOUNTING

48. Plaintiffs hereby incorporate every other allegation in this complaint as though fully set forth herein.

49. By virtue of the ERISA relationship, Defendants are fiduciaries of their employee benefit plans owing duties of care, loyalty, prudence and exclusivity to Plaintiffs. 29 U.S.C. § 1002(21)(A); *see also* § 1102(a)(1). Defendants are fiduciaries either by operation of law or due to their exercise of discretionary authority, control or responsibility for management of plan assets or administration of the plan.

50. On information and belief, Defendants have obtained lucrative payments in exchange for committing the plans' business to BCBSMT.

51. Defendants exercise exclusive control over much of the information necessary for Plaintiffs to ascertain the full extent of their claims against Defendants and the appropriate remedies therefore.

52. Although Plaintiffs have obtained some information, a full accounting of the relationship and payments between BCBSMT and Defendants in connection with the employee benefit plans has not been provided.

53. The relationships, payments and accounts that must be evaluated are complicated in nature and scope.

54. Plaintiffs need discovery to determine the full nature and extent of ERISA violations that have occurred.

55. Under ERISA § 502, 29 U.S.C. § 1132(a)(1)(b), Plaintiffs are entitled to obtain a clarification of their rights to past, current, or future distributions of the BCBSMT payments.

56. Under § 502, 29 U.S.C. § 1132(a)(3)(B)(ii), Plaintiffs are entitled to enforce those provisions of ERISA and their plans entitling them to information about why some but not all of them received partial distributions of those payments and how those partial distributions were calculated.

57. Under § 502, 29 U.S.C. § 1132(a)(3)(B)(i), Plaintiffs are entitled to appropriate equitable relief in the form of an accounting to redress Defendants' failure to act exclusively for the benefits of plan participants and failure to provide the requested information.

58. Under § 502, 29 U.S.C. § 1132(a)(2) and § 409, 29 U.S.C. § 1109(a), Plaintiffs are entitled to remedial relief in the form of an accounting for

Defendants' breaches of ERISA responsibilities, obligations, and duties, including failure to act exclusively for the benefits of plan participants and failure to provide the requested information.

59.     The Supreme Court of the United States has recognized the equitable relief available under ERISA to include actions for an accounting. *E.g.*, *Pender v. Bank of America Corp.*, 788 F.3d 354, 364-65 (4th Cir. 2015) (ERISA provision allowing participants to bring action for "appropriate equitable relief" to redress ERISA violations authorized action seeking an accounting for profits against their employer), on remand 2016 WL 1057635; *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 419 (3d Cir. 2013), certiorari denied 134 S. Ct. 2291; *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 134 (S.D.N.Y. 2003).

60.      Such accounting may demonstrate that Plaintiffs are entitled to further relief and accordingly reserve their right to assert additional claims in a future pleading.

61.     Pursuing alternative legal remedies at this time would require Plaintiffs to assert allegations on information and belief without benefit of assessing through the accounting the nature and extent of any ERISA violations.

## COUNT TWO – VIOLATION OF ERISA DUTIES

62.  Plaintiffs hereby incorporate every other allegation in this complaint as though fully set forth herein.

63.  Defendants are ERISA fiduciaries owing duties of care, loyalty, prudence and exclusivity to participants in their employee benefit plans. § 404(a), 29 U.S.C. § 1104(a).

64.  Defendants also owe duties to comply with requests for information by plan participants. *See* § 502(c), 29 U.S.C. § 1132(c).

65.  Defendants have breached their duties under ERISA, including by:

   a.  Entering into a transaction in which Defendants committed the plans to BCBSMT in exchange for payments from BCBSMT;

   b.  Committing the plans to six-year contracts with BCBSMT in contravention of the plans' ability to negotiate for better rates and terms;

   c.  Diverting payments received from BCBSMT to the hospitals' own use;

   d.  Refusing to explain partial distributions to some plan participants of payments received from BCBSMT; and,

   e.  Causing the plans to pay rates to BCBSMT that were so high BCBSMT was willing to pay more than $20 million to

> Defendants in exchange for Defendants purchasing insurance or services from BCBSMT in their capacities as plan fiduciaries.

66. Defendants attempted to – and did – profit at the expense of the plans and the participants.

67. Defendants knew or reasonably should have known that the conduct alleged herein constituted breach of their ERISA fiduciary duties of care, loyalty, exclusivity and/or prudence.

68. The business judgment rule is not a defense to ERISA claims. *Donovan v. Mazzola*, 716 F.2d 1226, 1231-32 (9th Cir. 1983); *Sallis v. Couturier*, 2009 WL 3055207 * 4 (N.D. Cal. Sept. 17, 2009) (business judgment rule not a defense to alleged ERISA violation); *Hilton Hotels v. Dunnet*, 275 F. Supp. 2d 954, 966 n.1 (W.D. Tenn. 2002) (business judgment rule does not apply to ERISA fiduciary decisions).

69. For Defendants' violation of their ERISA duties, Plaintiffs are entitled to legal, equitable and remedial relief as provided under ERISA.

70. At a minimum, Defendants must provide an accounting of the payments from BCBSMT, what portion of those payments were placed into trust accounts for the benefit of plan participants versus retained by the Defendants for their own use, and the basis for past and future partial distributions to plan participants.

71. In addition, Defendants must disgorge any profits obtained as a result of their involvement in a deal violating ERISA duties and compensate the plans for any losses suffered as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For a court-ordered accounting of the transfers, transactions and payments between and among Defendants, BCBSMT and the employee benefit plans.

2. Disgorgement of profits.

3. Reimbursement to the plans for any losses.

4. Attorney fees and costs, as provided by ERISA.

5. Any such other relief as may be permitted in equity or deemed appropriate by this Court.

DATED this 11th day of July, 2018.

/s/ John M. Morrison
John M. Morrison
Morrison, Sherwood, Wilson & Deola PLLP

*Attorneys for Plaintiffs*