John Morrison
MORRISON, SHERWOOD, WILSON & DEOLA PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
(t) (406) 442-3261
(f) (406) 443-7294
jmmmontana@msn.com

John L. Amsden
Michael G. Black
BECK, AMSDEN & STALPES PLLC
1946 Stadium Drive, Suite 1
Bozeman, MT 59715
(t) (406) 586-8700
(f) (406) 586-8960
amsden@becklawyers.com
mike@becklawyers.com
*Attorneys for Plaintiffs*

\* \* \* \* \* \* \*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

\* \* \* \* \* \* \*

| | |
|---|---|
| VICKY BYRD, JENNIFER TANNER, LINDA LARSEN, AUDREY TURNER, PAUL LEE, BRANDI BRETH, KATE HOULIHAN, BARB MOSER,<br><br>Plaintiffs,<br><br>v.<br><br>ST. PETERS REGIONAL HEALTH SERVICES, BOZEMAN HEALTH DEACONESS HOSPITAL, NORTHERN MONTANA HOSPITAL, RCHP BILLINGS—MISSOULA LLC, CMC MISSOULA INC., BILLINGS CLINIC,<br><br>Defendants. | CAUSE NO. CV-17-141-GF-BMM<br><br><br>**PLAINTIFFS' PRELIMINARY PRETRIAL STATEMENT** |

Pursuant to Local Rule 16.2(b)(1), Plaintiffs submit the following preliminary pretrial statement:

## A.     BRIEF FACTUAL OUTLINE

Defendant hospitals or their predecessor(s) ("Hospitals") previously owned New West Health Services, which provided health insurance to Montanans, including participants in Defendants' employee benefit plans. Plaintiffs are Montana nurses who are current or former participants in the employee benefit plans of the Hospitals.

In 2011 at the latest, Blue Cross Blue Shield of Montana ("BCBSMT") attempted to enter into a deal with Defendants or their predecessor(s) wherein BCBSMT would pay $26.3 million for Defendants' agreement to stop buying employee health insurance from New West and instead buy it exclusively from BCBSMT for six years. Further, so long as they did not compete with BCBSMT in the sale of commercial health insurance, BCBSMT would grant Defendants two seats on BCBSMT's board of directors.

This deal was blocked by a joint federal and state anti-trust action filed in this Court. *See United States and State of Montana v. Blue Cross and Blue Shield of Montana, et al.*, Cause No. CV-11-123-BLG-RFC. Final judgment was entered in that action on March 15, 2012.

The Hospitals instead partially divested their interest in New West by selling their health insurance business to an Oregon insurer named Pacific Source. With respect to their own roughly 11,000 employees, they entered into the agreement with BCBSMT that is the subject of this complaint, which was similar in many respects to the deal that was blocked by the antitrust action. Each of the Hospitals entered into an "Employee Benefit Plan Commitment Agreement" ("EBPCA") with BCBSMT that some of the Hospitals admit constituted one deal with BCBSMT. Plaintiffs assert the Hospitals received more than $20 million and two seats on BCBSMT's board of directors during the course of the deal. In return, the Hospitals guaranteed their employee health plan administration and stop loss business to BCBSMT for a minimum period of six years.

Beginning in late 2017, some of the Plaintiff nurses became alerted that their employer hospitals had received payments from BCBSMT some portion of which was being distributed to participants in the hospitals' employee benefit health plans. This raised a number of red flags as to whether the Hospitals—which are ERISA fiduciaries—were engaged in some form of self-dealing or diversion of plan assets and/or had acted with conflicted interests in connection with the plans.

Plaintiffs sought additional information concerning their entitlement as plan participants to distributions from payments made by BCBSMT to their employers. When they were unsuccessful in obtaining full and complete answers to their

questions, they filed the instant action seeking equitable relief under ERISA in the form of an accounting to obtain discovery and a declaration as to their rights. The information necessary to fully support any breach of fiduciary duty claims is uniquely within Defendants' control and unavailable to Plaintiffs.

**B.   JURISDICTION AND VENUE**

Plaintiffs filed this action under to obtain remedial relief deemed appropriate by the Court for a fiduciary's breach of ERISA duties. 29 U.S.C. § 1132(a)(2); 29 U.S.C. § 1109(a). Jurisdiction is based up on the existence of a federal question and the express terms of ERISA. 28 U.S.C. § 1331; 29 U.S.C. § 1132(e)(1). Supplemental jurisdiction, to the extent any claims may be deemed to be based upon state law, exists pursuant to 28 U.S.C. § 1367(a). Venue is proper in this Court based upon 29 U.S.C. § 1132(e)(2); *Varsic v. U.S.*, 607 F.2d 245, 247-48 (9th Cir. 1979).

**C.   FACTUAL BASIS OF EACH CLAIM ALLEGED BY PLAINTIFFS**

Some Defendants have admitted the ostensibly separate EBPCAs are in fact part of one overall deal between BCBSMT and the Hospitals. In entering into and executing the EBPCAs, the Hospitals had fiduciary duties to the plan participants under ERISA.

In December 2017, a St. Peter's hospital official named Karla Smith sent an

email to participants in St. Peter's employee health benefit plan stating:

> In 2011, St. Peter's Hospital sold its ownership interest in New West
> Health Services and transitioned its employee health coverage to Blue
> Cross Blue Shield of Montana. As part of the health insurance
> transition, St. Peter's set up an employee trust account in order to
> share **some of the proceeds** with the employees that participate in the
> health plan. …

(Emphasis added.) A similar email was sent in early 2018 by Northern Montana

Hospital CEO Dave Henry to participants in NMH's plan:

> In 2012, a portion of New West Health Services was sold to
> BlueCross and BlueShield. As part of this business transaction,
> Northern Montana Health Care received annual payments for six (6)
> years. **The Board of Trustees has suggested that as long as NMHC
> received those payments, employees covered by our insurance
> should receive a financial benefit as well, so the employee portion
> of those payments were put in a designated trust account**. In a
> recent review of those records, it was discovered that we missed
> paying out the 2016 and 2017 premium credits.

(Emphasis added.)

ERISA fiduciaries are prohibited from self-dealing in connection with their

employee benefit plans. The Hospitals must administer their ERISA plans for the

exclusive benefit of participants and beneficiaries. The EBPCA agreements

between the Hospitals and BCBSMT required all funds from the BCBSMT

purchase price to be paid into a trust "to be used exclusively for the payment of

benefits under the respective Employee Benefit Plan."

The Karla Smith and David Henry emails suggest employees would receive only "some" "portion" of the money paid by BCBSMT for the employee health benefit plan business. An unspecified remainder—perhaps even the bulk of the payments—has been diverted to the hospitals' own use at the expense of plan participants to whom they owe fiduciary duties. This suggests a violation of Defendants' duties under ERISA, under governing plan documents, and perhaps even under Defendants' agreement with BCBSMT.

As alleged in the complaint, public financial documents confirm BCBSMT expected to *more than recoup* its $20 million payments over the six-year term, as demonstrated by BCBSMT Health Quarterly Statement (dated March 31, 2012) filed with the Montana Commissioner of Securities and Insurance (State Auditor). This raises concerns that Defendants received payments from BCBSMT, which payments were supposed to be treated as plan assets, in exchange for committing the plans to a deal favoring BCBSMT at plan participants' expense. In this filing with the State Auditor, BCBSMT also characterized the arrangement with Defendants as "a six-year agreement with five of the six hospital owners of New West Hospital Services" and the report of *one agreement* with combined Hospitals Defendants underscores the nature of the joint venture at issue.

**D.      LEGAL THEORY UNDERLYING PLAINTIFFS' CLAIMS**

**1.      Accounting under ERISA**

The Hospitals are ERISA fiduciaries. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). As plan participants, Plaintiffs are entitled to an accounting to obtain additional information about: (1) acceptance of money by the Hospitals from BCBSMT to lock up the plans for six years; (2) the Hospitals' diversion of money from the plans to the Hospitals' own use; (3) the Hospitals causing or allowing the plans to pay BCBSMT more than market price for the coverage or services provided; or (4) the Hospitals selling for their own benefit the right (and duty) to shop for the best available value for the plans for the six year period.

Several related remedies typically available in equity are lumped together under the heading "accounting." Eichengrun, J., *Remedying the Remedy of Accounting*, 60 Ind. L.J. 463 (Summer 1985). One is an accounting of profits when the property subject to defendant's fiduciary obligations produces profits and the defendant is forced to disgorge those profits. *E.g., Parke v. First Reliance Stand. Life Ins. Co*., 368 F.3d 999, 1008-09 (8th Cir. 2004).

Another form of relief available under the concept of "accounting" is an equitable proceeding to obtain discovery, including in support of potential legal claims. An illustrative example is *Wheeler v. Benson-Taylor Inc*., 394 P.2d 523 (Ok. 1964). There, the plaintiff principal brought an equitable proceeding for

accounting to determine whether its agent had overcharged for construction of a hotel. Records were in the defendant's exclusive possession and he had refused to allow inspection or otherwise account for expenses. *Id.* at 524-25. The trial court resolved the dispute by having an accounting rendered. *Id.* at 526. The reviewing court affirmed, noting trial courts could either refer such matters to discovery masters or "fully try the case and dispose of all matters of accounting itself." *Id.* at 526-27.

Similarly, in *Winslow v. Winslow*, 38 N.W.2d 430 (Wis. 1949), a husband brought an equitable action for an accounting against his wife. He alleged he had turned his financial affairs over to her management, that she occupied a fiduciary relationship with him, and that she had not responded to his requests for an accounting. *Id.* at 431. The court ordered defendant to make records available for inspection. *Id.* at 431-32. The order was upheld on appeal on the basis that records maintained by the defendant were known only to her and the information was necessary to determine whether she owed the plaintiff any further relief. *Id.* at 432.

These actions are less common now that discovery may be had in legal proceedings initiated upon information and belief. Thus many decisions deny accounting and order the complainant to simply proceed with legal claims and obtain discovery in connection therewith. But traditional equitable proceeding to obtain discovery remains viable where—as here—the defendant has fiduciary

obligations to complainant. *See, e.g., Metro-Goldwyn-Mayer v. Antioch Theatre*, 367 N.E.2d 247, 255 (Ill. App. 1977) (when discovery is necessary, equitable accounting available if a fiduciary relationship exists); *Stuyvesant Ins. Co. v. Keystate Ins. Agency*, 218 A.2d 294, 296-97 (Pa. 1966) (same); *Arnold Prods. v. Favorite Films*, 298 F.2d 540, 542-43 (2d Cir. 1962) (equity does not support accounting to ascertain damages except where fiduciary relationship exists).

For example, in *Kirksey Motors v. Gen. Acceptance*, 161 So. 2d 475 (Ala. 1964), an auto dealer and a lender entered into a contract whereby dealer would send customers to lender for financing in exchange for a payment on each loan. A dispute arose as to whether lender was rendering full payment for fully repaid loans as agreed. *Id*. at 475-76. Dealer sued in equity for accounting and discovery. Lender's demurrer was sustained. Dealer argued on appeal it was without knowledge as to what loss it had incurred, if any, as the information was known only to lender. *Id*. at 476. The court held this was not an adequate basis to proceed with an equitable accounting unless, inter alia, "a fiduciary relationship exists between the parties." *Id*. at 476.

Similarly, in *Burr v. State Bank of St. Charles*, 100 N.E.2d 773 (Ill. App. Ct. 1951), complainant sought an accounting of profits related to crops grown on his property. The amount, value and disposition was known only to defendant; thus plaintiff needed the accounting to prepare for an action at law. *Id*. at 776. The court

held he could simply proceed with legal claims and obtain discovery in connection

therewith. To obtain the information by way of equitable accounting, he would

need to demonstrate some basis, such as "the existence of a fiduciary relation." *Id.*;

*see also Terner v. Glickstein & Terner*, 28 N.E.2d 846, 847 (N.Y. 1940) (same);

*Huebener v. Chinn*, 207 P.2d 1136, 1141, 1145, 1149 (Or. 1949) (same).

ERISA cases support an accounting for profits (disgorgement) as

"appropriate equitable relief" to redress ERISA violations. E.g., *Parke*, 368 F.3d at

1006, 1008-09; *Pender v. Bank of Am.*, 788 F.3d 354, 364-65 (4th Cir. 2015)

(ERISA provision allowing participants to bring action for "appropriate equitable

relief" authorized accounting for profits against employer), on remand 2016 WL

1057635; *Edmonson v. Lincoln Nat. Life Ins.*, 725 F.3d 406, 419 (3d Cir. 2013),

cert. denied 134 S. Ct. 2291; *Dunnigan v. Metro. Life Ins.*, 214 F.R.D. 125, 134

(S.D.N.Y. 2003).

Importantly, ERISA also supports the other form of accounting—i.e., an

equitable proceeding to obtain discovery in support of potential legal claims. For

example, in *Levy*, LEXIS 44987, plaintiff plan participants alleged the defendant

employer "may have" misappropriated employee pension plan assets. They sought

"records and accounts of all transactions involving the [pension plan]." *Id.* at *5.

The court noted that "ERISA permits plaintiffs to seek equitable relief, including

an accounting." *Id*. (citing 29 U.S.C. § 1132(a)(3)(B)(i); ABA Section of Labor

and Employment Law, Employee Benefits Law (Jeffrey Lewis et al., 3d ed. 2012)).

### 2.     Breach of Fiduciary Duties under ERISA

The Hospitals concede that they are fiduciaries. Defendants' conduct

implicates ERISA fiduciary duties including: (1) the duty of loyalty, requiring all

decisions with regard to the plan to be made in the interests of participants; (2) the

duty of prudence, requiring the care, skill, prudence, and diligence of a prudent

person acting under similar circumstances; and, (3) the duty of exclusivity,

requiring fiduciaries to act for the exclusive purpose of providing benefits to plan

participants.

The alleged conduct by the Hospitals violates ERISA in that the fiduciary or

fiduciaries failed to:

- Discharge duties with respect to a plan solely in the interests of
  participants for the exclusive purpose of providing benefits and
  defraying expenses. § 404(a)(1), 29 U.S.C. § 1104(a)(1).

- Discharge duties with the care, skill, prudence, and diligence a
  prudent person acting in like capacity and familiar with such
  matters. § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

- Comply with a request for information required to be furnished
  a plan participant upon request. § 502(c), 29 U.S.C. § 1132(c).

Plaintiffs further seek to:

- Recover benefits due under the terms of the plan, enforce rights under the plan, or clarify rights to future benefits under the plan. § 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(b).

- Enjoin violations of any provision of ERISA or any plan provision. § 502 (a)(3)(A), 29 U.S.C. § 1132(a)(3)(A).

- Enforce provisions of ERISA and terms of the plan. § 502 (a)(3)(B)(ii), 29 U.S.C. § 1132(a)(3)(B)(ii).

- Obtain other appropriate equitable relief to redress violations of ERISA or of the terms of the plan. § 502 (a)(3)(B)(i), 29 U.S.C. § 1132(a)(3)(B)(i).

The information necessary to support ERISA breach of fiduciary claims is uniquely within Defendants' control and has been unavailable to Plaintiffs. Upon obtaining an accounting, the nature and extent of any fiduciary liability will become clearer. Plaintiffs are entitled to recover, on behalf of their respective plans, any ill-gotten gain by the Hospitals, including disgorgement of profits and reimbursement to the plans for any losses. The conduct of the Hospitals may also involve prohibited self-dealing under 29 U.S.C. § 1106 (ERISA § 406) entitling Plaintiffs to further relief under 29 U.S.C. § 1109 (ERISA § 409). "In light of Congress' overriding

concern with the protection of plan participants and beneficiaries, courts

have generally construed the protective provisions of § 406(b) [29 U.S.C.

§1106(b), prohibiting self-dealing] broadly." *Acosta v. Pacific Enterprises*,

950 F.2d 611, 620 (9th Cir. Cal. 1991) *citing, Lowen v. Tower Asset*

*Management, Inc.,* 829 F.2d 1209, 1213 (2d Cir. 1987); *Leigh v. Engle,* 727

F.2d 113, 126 (7th Cir. 1984).

**E.       COMPUTATION OF DAMAGES**

Plaintiffs seek an accounting for funds received from BCBSMT under the

EBPCA(s), accounting for expenditures of such funds, and restoration to the

employee benefit plans of any improper diversion of funds by the Hospitals. Due

to the nature of the dispute, the information necessary to quantify these claims is

uniquely within Defendants' control and presently unavailable to Plaintiffs.

**F.       RELATED LITIGATION**

Related litigation includes *United States and State of Montana v. Blue Cross*

*and Blue Shield of Montana, et al.*, Cause No. CV-11-123-BLG-RFC.  Final

judgment was entered in that action on March 15, 2012.

**G.       PROPOSED STIPULATIONS OF FACT AND APPLICABLE LAW**

1.       Plaintiff Audrey Turner was an employee of Northern Montana

Hospital at some point between January 1, 2012 and December 31, 2017.

2.      Plaintiff Audrey Turner was a participant in Northern Montana Hospital's employee benefit health plan at some point between January 1, 2012 and December 31, 2017.

3.      Plaintiff Vicky Byrd was an employee of St. Peter's Health at some point between January 1, 2012 and December 31, 2017.

4.      Plaintiff Vicky Byrd was a participant in St. Peter's Health employee benefit health plan at some point between January 1, 2012 and December 31, 2017.

5.      Plaintiff Jennifer Tanner was an employee of St. Peter's Health at some point between January 1, 2012 and December 31, 2017.

6.      Plaintiff Jennifer Tanner was a participant in St. Peter's Health employee benefit health plan at some point between January 1, 2012 and December 31, 2017.

7.      Plaintiff Linda Larsen was an employee of Bozeman Deaconess Health Services at some point between January 1, 2012 and December 31, 2017.

8.       Plaintiff Linda Larsen a participant in the Bozeman Deaconess Health Services employee benefit health plan at some point between January 1, 2012 and December 31, 2017.

9.      Plaintiff Paul Lee was an employee of St. Peter's Health at some point between January 1, 2012 and December 31, 2017.

10.    Plaintiff Paul Lee was a participant in St. Peter's Health employee benefit health plan at some point between January 1, 2012 and December 31, 2017.

11.    Plaintiff Brandi Breth was an employee RCHP Billings-Missoula, LLC doing business as Community Medical Center, at some point between January 1, 2012 and December 31, 2017.

12.    Plaintiff Brandi Breth was a participant in the employee benefit health plan of RCHP Billings-Missoula, LLC doing business as Community Medical Center, at some point between January 1, 2012 and December 31, 2017.

13.    Plaintiff Kate Houlihan was an employee RCHP Billings-Missoula, LLC doing business as Community Medical Center, at some point between January 1, 2012 and December 31, 2017.

14.    Plaintiff Kate Houlihan was a participant in the employee benefit health plan of RCHP Billings-Missoula, LLC doing business as Community Medical Center, at some point between January 1, 2012 and December 31, 2017

15.    Plaintiff Barb Moser was an employee of Billings Clinic at some point between January 1, 2012 and December 31, 2017.

16.    Plaintiff Barb Moser was a participant in the Billings Clinic employee benefit health plan at some point between January 1, 2012 and December 31, 2017.

17.    Northern Montana Hospital is a public benefit corporation operating in Hill County, Montana.

18.     Northern Montana Hospital sponsors an employee benefit plan that provides health care benefits to eligible employees and their eligible dependents.

19.     Northern Montana Hospital entered into an "Employee Benefit Plan Commitment Agreement" with Blue Cross/Blue Shield of Montana, Inc. that commenced on January 1, 2012.

20.     The referenced "Employee Benefit Plan Commitment Agreement" that Northern Montana Hospital entered into with Blue Cross/Blue Shield of Montana, Inc. included provisions concerning Northern Montana Hospital's employee health benefit plan.

21.     St. Peter's Health was formerly known as St. Peter's Hospital and operates in Lewis and Clark County, Montana.

22.     St. Peter's Health sponsors an employee benefit plan that provides health care benefits to eligible employees and their eligible dependents.

23.     St. Peter's Health entered into an "Employee Benefit Plan Commitment Agreement" with Blue Cross/Blue Shield of Montana, Inc. that commenced on January 1, 2012.

24.     The referenced "Employee Benefit Plan Commitment Agreement" that St. Peter's Health entered into with Blue Cross/Blue Shield of Montana, Inc. included provisions concerning St. Peter's Health's employee health benefit plan.

25.     Bozeman Deaconess Health Services is a nonprofit public benefit corporation operating in Gallatin County, Montana.

26.     Bozeman Deaconess Health Services sponsors an employee benefit plan that provides health care benefits to eligible employees and their eligible dependents.

27.     Bozeman Deaconess Health Services entered into an "Employee Benefit Plan Commitment Agreement" with Blue Cross/Blue Shield of Montana, Inc. that commenced on January 1, 2012.

28.     The referenced "Employee Benefit Plan Commitment Agreement" that Bozeman Deaconess Health Services entered into with Blue Cross/Blue Shield of Montana, Inc. included provisions concerning the Bozeman Deaconess Health Services employee health benefit plan.

29.     Defendant RCHP Billings-Missoula, LLC is a Delaware limited liability doing business as Community Medical Center in Missoula County, Montana.

30.     Defendant RCHP Billings-Missoula, LLC sponsors an employee benefit plan that provides health care benefits to eligible employees and their eligible dependents.

31.    The predecessor entity of Defendant RCHP Billings-Missoula, LLC entered into an "Employee Benefit Plan Commitment Agreement" with Blue Cross/Blue Shield of Montana, Inc. that commenced on January 1, 2012.

32.    The referenced "Employee Benefit Plan Commitment Agreement" that was entered into between the predecessor entity of Defendant RCHP Billings-Missoula, LLC and Blue Cross/Blue Shield of Montana, Inc. included provisions concerning Community Medical Center's employee health benefit plan.

33.    Defendant Billings Clinic is a nonprofit health care organization operating in Yellowstone County, Montana.

34.    Defendant Billings Clinic sponsors an employee benefit plan that provides health care benefits to eligible employees and their eligible dependents.

35.    Defendant Billings Clinic entered into an "Employee Benefit Plan Commitment Agreement" with Blue Cross/Blue Shield of Montana, Inc. that commenced on January 1, 2012.

36.    The referenced "Employee Benefit Plan Commitment Agreement" that Defendant Billings Clinic entered into with Blue Cross/Blue Shield of Montana, Inc. included provisions concerning Billings Clinic's employee health benefit plan.

37.    At all times relevant to this matter, administration of Northern Montana Hospital's employee benefit health plan was subject to provisions of the

Employee Retirement Income Security Act of 1974 (ERISA), as codified at 29 U.S.C. §§ 1001, *et seq*.

38.     At all times relevant to this matter, administration of Bozeman Deaconess Health Services employee benefit health plan was subject to provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as codified at 29 U.S.C. §§ 1001, *et seq*.

39.     At all times relevant to this matter, administration of St. Peter's Health employee benefit health plan was subject to provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as codified at 29 U.S.C. §§ 1001, *et seq*.

40.     At all times relevant to this matter, administration of the employee benefit health plan of RCHP Billings-Missoula, LLC doing business as Community Medical Center, was subject to provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as codified at 29 U.S.C. §§ 1001, *et seq*.

41.     At all times relevant to this matter, administration of Billings Clinic's Health employee benefit health plan was subject to provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as codified at 29 U.S.C. §§ 1001, *et seq*.

42.     The parties are not limited to the restrictions on the number of depositions set forth in Fed.R.Civ.P. 30(a)(2)(A)(i) to the extent any party has a

good faith basis for noticing any deposition that would result in more than ten (10) depositions being taken by Plaintiffs or Defendants.

## H.    PROPOSED DEADLINE FOR JOINDER OF PARTIES OR AMENDMENT OF PLEADINGS

Joinder of parties/amendment of pleadings by November 9, 2018.

## I.    CONTROLLING ISSUES OF LAW SUITABLE FOR PRETRIAL DISPOSITION

1.     Whether the Hospitals are fiduciaries under ERISA with respect to payments received from BCBSMT under the EBPCAs.

2.     Whether the Hospitals must account for payments received from BCBSMT under the EBPCAs and disposition thereof.

3.      Whether the Hospitals breached their fiduciary duties to Plaintiffs.

4.     Whether the Hospitals engaged in prohibited self-dealing transactions.

5.     Whether the Hospitals have liability under ERISA relating to such payments or dispositions.

## J.    INDIVIDUALS WITH INFORMATION THAT MAY BE USED IN PROVING OR DENYING CLAIMS OR DEFENSES

As set forth in Plaintiffs' Initial Disclosures: Plaintiffs identify the following individuals who may have knowledge that significantly bears on the claims made in the Complaint:

**1)**    Vicky Byrd
       3685 Wildfire Rd
       East Helena, MT  59635
       (406) 459-2915

2)    Jennifer Tanner
      6 Running Horse
      Clancy, MT  59634
      (406) 439-9080

3)    Linda Larsen
      3009 Healy Ave
      Bozeman, MT   59715
      (406) 585-3064

4)    Audrey Turner
      928 1st Avenue
      Havre, MT  59501
      (406) 406-390-0034

5)    Paul Lee
      2280 Lime Kiln Rd
      Helena MT  59601
      (406) 439-4103

6)    Brandi Breth
      PO Box 3185
      Missoula MT 59806
      (406) 880-3386

7)    Kate Houlihan
      3706 Rosecrest Dr
      Missoula MT  59804
      (406) 531-1394

8)    Barb Moser
      1902 Belvedere Dr
      Billings MT  59102
      (406) 698-5171

The foregoing individuals are Plaintiffs in this litigation. They have

knowledge of their participation in the benefit plan(s) at issue and communications

with their employer regarding same.

9)      Dave Henry and all other individuals involved with administration of the employee benefit plan administered by Northern Montana Hospital.

10)     Karla Smith and all other individuals involved with administration of the employee benefit plan administered by St. Peters Regional Health Services.

11)     Defendants and their employees involved with administration of their respective employee benefit plans.

12)     Defendants and their employees who were involved in negotiating and implementing the EBPCAs.

13)     Defendants and their employees who were involved in negotiating and implementing the deal with Blue Cross Blue Shield of Montana in and about 2011 that led to the EBPCAs.

14)     Defendants and their employees who were involved in negotiating and attempting to implement the letter of intent with Blue Cross Blue Shield of Montana in and about August 2011 that led to the antitrust lawsuit filed in federal by the United States and State of Montana.

The foregoing individuals are employed by one or more Defendant and therefore may have knowledge of plan administration related to the claims at issue.

15)     Blue Cross/Blue Shield of Montana (BCBSMT) and its employees including those who have information about negotiation and/or implementation of Defendants' Employee Benefit Plan Commitment Agreements (EBPCAs) and/or about the deal between Defendants and Blue Cross Blue Shield of Montana in and about 2011 that led to the EBPCAs.

16)     Attorneys of record in *United States and State of Montana v. Blue Cross and Blue Shield of Montana et al.*, Cause No. CV-11-123-BLG-RFC.

17)     Office of the Montana State Auditor and its employees.

The foregoing individuals have knowledge of transactions between BCBSMT and Defendants during 2011 to the present relating to agreements with respect to Defendants' employee benefit plans and may have knowledge of Defendants' conduct in relation to those plans.

18)    Defendants and their employees, who have knowledge of transactions between BCBSMT and Defendants during 2011 to the present relating to agreements with respect to Defendants' employee benefit plans and Defendants' conduct in relation to those plans.

## K.    INSURANCE

Plaintiffs are not aware of any insurance covering the matters at issue with the exception that Defendant Billings Clinic has identified the existence of a fiduciary liability policy which may provide coverage. Plaintiffs have not had the opportunity to analyze its coverage provisions.  No other Defendant has identified the existence of an insurance policy.

## L.    SETTLEMENT DISCUSSIONS / PROSPECTS FOR COMPROMISE

Plaintiffs are amenable to settlement discussions.

## M.    SUITABILITY OF SPECIAL PROCEDURES

Plaintiffs are not aware of any special procedures needed in this case.

DATED this 25th day of July 2018.

/s/ Michael G. Black
BECK & AMSDEN, PLLC
*Attorneys for Plaintiffs*

/s/ John J. Morrison
MORRISON, SHERWOOD,
WILSON & DEOLA PLLP
*Attorneys for Plaintiffs*