John L. Amsden, Esq.
Michael G. Black, Esq.
BECK, AMSDEN & STALPES PLLC
1946 Stadium Drive, Suite 1
Bozeman, MT 59715
Tel:    (406) 586-8700
Fax:    (406) 586-8960
amsden@becklawyers.com
mike@becklawyers.com

John M. Morrison, Esq.
MORRISON, SHERWOOD, WILSON & DEOLA PLLP
401 North Last Chance Gulch, PO Box 557
Helena, MT 59601
Tel:    (406) 442-3261
Fax:    (406) 443-7294
john@mswdlaw.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, GREAT FALLS DIVISION

| | |
|---|---|
| AUDREY TURNER, VICKY BYRD, JENNIFER TANNER, LINDA LARSEN, PAUL LEE, BRANDI BRETH, KATE HOULIHAN, BARB MOSER, <br> Plaintiffs, <br><br> v. <br><br> NORTHERN MONTANA HOSPITAL, a Montana Nonprofit Corporation, ST. PETER'S HOSPITAL, a Montana Nonprofit Corporation, BOZEMAN DEACONESS HEALTH SERVICES, a Montana Nonprofit Corporation,  RCHP BILLINGS—MISSOULA LLC, a Delaware Limited Liability Company, CMC MISSOULA INC., a Montana Nonprofit Corporation, and BILLINGS CLINIC, a Montana Nonprofit Corporation, <br> Defendants. | CAUSE NO. CV-17-141-GF-BMM <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY SUBPOENA DIRECTED TO CLIFTONLARSONALLEN, LLP** |

## INTRODUCTION

This discovery dispute involves a reissued subpoena for production of documents regarding accounting and auditing services provided by CLA. Ex. A (third page, Revised Ex. A). The subpoena was initially issued on January 23, 2019, with a response date of February 6, 2019, for delivery of responsive documents at a location in Clayton, Missouri. Ex. B. CMC did not object to the first subpoena. After service of the subpoena upon CLA, general counsel for CLA (Mr. John Shutkin) contacted counsel for Plaintiffs about responsive materials and requested a two-week extension of time to respond to the subpoena. This communication further resulted in a revised subpoena to clarify, but not expand, the scope of requested production. Ex. C. Plaintiffs subsequently reissued the subpoena for production of documents on or before February 20, 2019, at the office of Plaintiffs' counsel in Bozeman, and CLA confirmed on February 7, 2019, that it would timely produce responsive documents at the office of counsel in Bozeman. Ex. D. CLA did not object to the subpoena in any respect.

On February 19, 2019, CMC counsel sent a letter raising several boiler-plate objections, some of which appear entirely unrelated to the CLA subpoena. Ex. D. Because of this letter, it is Plaintiffs' understanding the CLA will not produce responsive documents absent an Order of this Court.

# BACKGROUND

**A.   Claims Asserted by Plaintiff Employee Benefit Plan Participants Against Defendant Hospitals.**

As alleged in Plaintiffs' complaint, CMC is an ERISA fiduciary in connection with its employee health benefits plan and owed duties of care, loyalty, prudence and exclusivity to the Plaintiffs. 29 U.S.C. § 1002(21)(A); *see also* § 1102(a)(1). CMC Missoula, along with other Montana hospitals, had an interest in an entity called New West Health Services, which provided health insurance to participants in the hospitals' employee benefit plans. When the New West venture proved unprofitable, these hospitals attempted to sell New West to Blue Cross Blue Shield of Montana (BCBSMT). When this proposed transaction was blocked by federal and state regulators on antitrust grounds, each of the hospital Defendants entered into an Employee Benefit Payment Commitment Agreement (EBPCA) with BCBSMT under which the hospitals bound their health care plans to obtain benefits from BCBSMT for six years (2012-2017) in return for BCBSMT depositing funds into a trust created exclusively for the payment of benefits to hospital employees under employee benefit plans.[1] CMC collected over $4.2 million from BCBSMT under the EBPCA.

---

[1] Plaintiffs recently filed a brief in support of a separate discovery motion, which recounts the background of this matter in greater detail and Plaintiffs incorporate the relevant portion of that brief by reference in order to obviate the need to repeat such discussion here. *See* Plaintiffs' Brief in Support of Motion to Compel Defendant CMC to Provide Further Responses to Plaintiffs' Second Set of Discovery Requests (Doc. 93).

Case 4:17-cv-00141-BMM   Document 97   Filed 03/04/19   Page 4 of 13

Yet the hospitals did not use the proceeds of the transaction exclusively for the benefit of the plans. BCBSMT paid $4,285,012 to CMC under the EBPCA, and CMC admits it did not use all such funds for employee benefits. Ex. E, CMC Answer to Interrogatory No. 8.[2] Over $2 million from the BCBSMT payments was "transferred" to CMC outright.

Moreover, CMC diverted EBPCA funds to pay CMC's separate obligation to fund employee health care benefits under collective bargaining agreements. For example, beginning in January 2007, CMC Missoula was required to provide $593 per month in benefit credits to each full-time registered nurse. Ex. F.[3] CMC recognized in April 2012 that its use of EBPCA payments in the health care plan raised issues in accounting for INBR (incurred but not recorded) claims and with union contracts. Ex. G (CMC 1399-1400).[4] CMC's "self-funded plan analysis" for the first six months of 2012 demonstrates how "trust funds" paid by BCBSMT under the EBPCA were used for the benefit of CMC as a substitute for CMC Cash Contributions and a separate line item reserving for INBR claims was added to the

---

[2] This exhibit is an excerpt from CMC Missoula, Inc.'s Responses to Plaintiffs' First Discovery Requests (dated January 18, 2019).

[3] This exhibit is an excerpt from the Contract between Montana Nurses Association CMC Local Unit and Community Medical Center, Inc. for February 1, 2010 – January 31, 2013.

[4] CMC has objected to inclusion of Exhibit G in any filing accessible on PACER, so it will be submitted to the Court for review in camera upon leave of Court. CMC has been provided a copy of this document. Plaintiffs do not believe that there is good cause to designate this document as "Confidential" and have requested a status conference with the Court in this regard.

*PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY SUBPOENA DIRECTED TO CLA* - PAGE 4

CMC balance sheet. Ex. H (CMC 592). Thus, CMC used BCBSMT payments, which should have been used exclusively for the benefit of the plans, to cover their own separately-owed funding obligations. The decisions about how to use the BCBSMT payments were made by CMC in its capacity as an ERISA fiduciary of its health plans. CLA provided accounting services to CMC for these payments and advised CMC that payments from BCBSMT were part of an "exchange transaction" that decreased CMC's liability to pay employee benefits. Ex. I (CMC 1512).

CMC transferred certain assets to a new entity (Defendant RCHP Billings-Missoula) in early 2015. Ex. E, CMC Answer to Interrogatory No. 2. CLA was involved in how the BCBSMT payments should be accounted for after the asset transfer, particularly the restriction that the "funds will be place (sic) in trust to be used exclusively towards funding employee benefits." Ex. J (RCHP 962).

Plaintiffs are entitled to discover from CLA, by subpoena directed to CLA, how it viewed the CMC transaction with BCBSMT, including accounting analysis during negotiation, planning and implementation of the transaction.

As ERISA fiduciaries, Defendant hospitals were prohibited from self-dealing. 29 U.S.C. § 1106. Moreover, ERISA mandates that assets of a plan shall never inure to the benefit of any employer, but must be used for the exclusive purpose of providing benefits to participants and beneficiaries:

**(c)    Assets of plan not to inure to benefit of employer; allowable purposes of holding plan assets**

(1)    Except as provided in paragraph (2), (3), or (4) or subsection (d), or under sections 1342 and 1344 of this title (relating to termination of insured plans), or under section 420 of Title 26 (as in effect on July 31, 2015), the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

29 U.S.C.A. § 1103(c)(1). This provision explicitly precludes employers' use of employee benefit trust funds to ameliorate the employers' own liabilities to the plan *even if the assets in the trust were originally contributed by the employers*. *See Chao v. Malkani*, 452 F.3d 290, 298 (4th Cir. 2006); *Chao v. Anderson*, No. 1:06CV433 JCC, 2007 WL 1448705 at *2 (E.D. Va. May 9, 2007).

Plaintiffs are entitled to legal, equitable and remedial relief as provided for under ERISA. Their action seeks, *inter alia*, disgorgement of profits, compensation to the plans for any losses, attorney fees, costs, and prejudgment interest. The BKD subpoenas seek information about how the hospitals treated the BCBSMT payments on their books, not merely how the health care plans established by the hospitals treated any BCBSMT payments.[5]

---

[5] Funded welfare plans, which includes plans providing health care benefits funded by a trust, typically must be audited annually pursuant to ERISA Section 103. *See* 29 U.S.C. § 1023(a)(3); 29 C.F.R. 2520.103-1.

**B.      The Instant Discovery Dispute and Plaintiffs' Efforts to Resolve the Dispute Without Court Intervention.**

**1.      Plaintiffs' Revised Subpoenas.**

Plaintiffs' revised subpoena to CLA requested information regarding how CMC accounted for funds received from BCBSMT, whether CLA auditors raised any concerns regarding the use(s) of such funds and how CMC responded to the auditors' concerns. The document requests in the respective subpoenas seek:

1.   All **DOCUMENTS**, including work papers and notes, evidencing, reflecting or referring to:

   a.   the assets of the Community Medical Center Welfare Benefit Plan; or

   b.   the liabilities of CMC Missoula, Inc. to the Community Medical Center Welfare Benefit Plan for health benefits due or anticipated to be due, including without limitation under any collective bargaining arrangement, from January 1, 2012 to the present;

2.   All **DOCUMENTS**, including work papers and notes, evidencing, reflecting or referring to the Return of Organization Exempt From Income Tax, IRS Form 990, or Form 5500, and from January 1, 2012 to the present that evidence, reflect or refer to:

   a.   the accounting treatment for transactions contemplated by or effectuated as a result of the Letter of Intent, Attachment A1 hereto, or the implementation of that Letter of Intent; or

   b.   the accounting treatment for the transactions contemplated by or effectuated as a result of the proposed purchase of New West or it assets, as described by Attachment A2 hereto;

3.   All **DOCUMENTS**, including drafts thereof, constituting, or reporting or advising on (including all audit reports and footnotes, drafts of footnotes and memoranda), the year-end financial statements of the Community Medical Center Welfare Benefit Plan and/or CMC Missoula, Inc. (income statement, statement of cash flows and balance sheet) for the years ending December 31, 2011 to the present, in particular any discussion of the

transactions contemplated by or effectuated as a result of the transactions described in Attachments A1 and A2 hereto; and

4.  All **DOCUMENTS** reflecting or evidencing any statements of, discussions with or analysis for management concerning or relating to any of the foregoing items (which are normally included in work papers requested in Item 1, but are expressly meant by this category to include emails, memoranda and notes of conversations).

*See* Ex. A (third page, Revised Ex. A). Attachment A1 to the subpoena is the Letter of Intent between BCBSMT and the five Defendant hospitals regarding an agreement that would commence on January 1, 2012. Attachment A2 to the subpoena is a letter from BCBSMT to counsel for New West Health Services (dated January 7, 2011) broadly outlining the terms of a proposal where New West "Owners" would be paid for "Hospital Lives" in return for New West ceasing operations.[6]

The subpoena seeks documents regarding accounting treatment of actual or projected items for health care benefits for the hospitals' employees. This includes accounting for health benefit plans themselves, but also includes accounting treatment of the hospitals as an entity with respect to "Hospital Lives" to whom BCBSMT proposed to provide, or actually provided, health benefits.

CMC did not object to the initial subpoena, only to the revised and reissued subpoena that narrowed the document request. CMC objections to the revised

---

[6] CMC has objected to inclusion of Attachment A2 in any filing accessible on PACER, so it will be submitted to the Court for review in camera upon leave of Court. CMC has been provided a copy of this document. Plaintiffs do not believe that there is good cause to designate this document as "Confidential" and have requested a status conference with the Court in this regard.

subpoena under the Montana Rules of Civil Procedure, generally based upon scope. Ex. D. The subpoena does not request any documents related to any 401(k) retirement plan or 403(b) plan, which would be a retirement plan with similar attributes to a 401(k) plan. The subpoena is clearly limited to the Community Medical Center *Welfare* Benefit Plan. Under ERISA, a "welfare plan" is defined by 29 U.S.C. § 1002(1) and does not include a retirement plan. CMC Missoula is fully aware that Plaintiffs do not seek production of documents relating to retirement plans. The subpoena also does not request any personal health care or financial information regarding any patient or employee, but CMC simply asserts boilerplate objections about what the accountants' records may contain. CMC Missoula's obligations to its employees under collective bargaining agreements are clearly related to this lawsuit because CMC has no right to divert EBPCA funds, which must be held in trust for health care benefits, in order to satisfy its own obligations to employees. Any accounting treatment or projections regarding hospital contractual obligations to fund health care benefits is clearly discoverable.

CLA agreed to produce documents in Bozeman in response to the reissued subpoena, but later declined after CMC objected. CMC's rote listing of objections simply does not justify any failure of CLA to produce responsive documents.

## DISCUSSION

**A.   CLA Should Be Ordered to Produce All Documents in Its Possession, Custody or Control That Are Responsive to the Revised Subpoena.**

The Federal Rules of Civil Procedure permit discovery of any non-privileged matter relevant to any party's claims or defenses and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id*. "The scope of discovery through a subpoena under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)." *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1217 (N.D. Cal. 2015) (citations omitted).

The information sought goes directly to the heart of Plaintiffs' claims, i.e., that CMC knew the payments received from BCBSMT constituted plan assets, knew those payments would be used to offset other liabilities of CMC (not the plan), and that CMC strategically made the decision to continue on that course nonetheless.

Relevance remains a broadly-construed standard under the Federal Rules. A request for discovery should be considered relevant if there is any possibility the

information sought may be relevant to the claim or defense of any party. The subpoenas clearly seek relevant evidence.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel should be granted.

DATED this 4th day of March 2019.

SUBMITTED BY:

/s/ Michael G. Black
BECK AMSDEN & STALPES, PLLC
1946 Stadium Drive, Suite 1
Bozeman, MT 59715

John M. Morrison, Esq.
MORRISON, SHERWOOD, WILSON &
DEOLA PLLP
401 North Last Chance Gulch, PO Box 557
Helena, MT 59601

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This brief complies with L.R. 7.1(d)(2). There are 2,380 words in this brief, excluding the caption and certificate of compliance.

DATED this 4th day of March 2019.

/s/ Michael G. Black
BECK, AMSDEN & STALPES, PLLC

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 4th day of March 2019, a true and accurate copy of the foregoing was served upon counsel listed below by the means indicated:

CliftonLarsonAllen LLP                                             U.S. MAIL
c/o Adam Steimel, Individual Contact for
Registered Agent CT Corporation System Inc.
120 South Central Avenue, Suite 400
Clayton, MO 63105

CliftonLarsonAllen LLP                               EMAIL AND U.S. MAIL
c/o John A. Shutkin, Esq.
General Counsel
CliftonLarsonAllen LLP
131 Hartwell Avenue, Suite 300
Lexington, MA 02421
john.shutkin@claconnect.com


                                        /s/ Michael G. Black
                                        BECK, AMSDEN & STALPES, PLLC